**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x

MICHAEL F. WITKOWICH,
                      Plaintiff,

-against-

ERIC H. HOLDER, JR. as Attorney General of the
United States, the UNITED STATES MARSHALS
SERVICE, and BENIGNO REYNA, as Director of
the United States Marshals Service,
                      Defendants.

------------------------------------- x

05 Civ. 7756 (GBD)

MEMORANDUM AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/10

GEORGE B. DANIELS, District Judge:

Plaintiff Michael F. Witkowich brought this action against Eric H. Holder, Jr.[1] in his official capacity as Attorney General of the United States; and Benigno Reyna in his official capacity as Director of the United States Marshals Service ("USMS"), alleging unlawful retaliation. He brings this claim pursuant to section 633a of the Age Discrimination in Employment Act of 1967 ("ADEA") claiming unlawful retaliation for his filing an age discrimination case against his prior employer, the United States Marshals Service. Plaintiff seeks damages for financial losses and emotional distress.

Plaintiff's original complaint for age discrimination was dismissed February 25, 2008. Witkowich v. Gonzales, 541 F.Supp.2d 572 (S.D.N.Y. 2008). The court held that there was a legitimate business reason for promoting another employee who was younger, and that there was insufficient evidence to establish a pattern or practice of age discrimination. However, the court granted, *sua sponte*, the plaintiff leave to amend his complaint within 20 days to add a retaliation cause of action pursuant to section 633a of the Age Discrimination Enforcement Act of 1967. Id. at 590. Plaintiff filed the amended complaint on March 6, 2008. Defendant now moves for summary judgment pursuant to Fed.R.Civ.P. 56(c), arguing that all of Plaintiff's claims are not

---

[1] Eric H. Holder, Jr. was sworn in as the U.S. Attorney General February 2009, succeeding Michael Mukasey. Pursuant to Fed.R.Civ.P. 25(d), Holder has been automatically substituted as a defendant.

materially adverse employment actions nor do they legally constitute retaliatory acts. For the reasons stated below, Defendants' motion for summary judgment is granted.

## Factual History

Plaintiff is a former member of the United States Marshals Service ("USMS"), who retired on December 31, 2007, after 30 years of service. (Plan. 56. Stat. ¶ 14.) He served as a Supervisory Deputy United States Marshal in the White Plains sub-office of the Southern District of New York for 18 years. (Def. Br. pg 4.) On May 31, 2005, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that he was passed over for several promotions in favor of younger candidates. On September 2, 2005, Plaintiff brought an age discrimination action pursuant to the ADEA, which was summarily dismissed.[2] Witkowich v. Gonzales, 541 F.Supp.2d 572 (S.D.N.Y. 2008). Pursuant to the court's decision to grant Plaintiff *sua sponte* leave to amend his complaint, Plaintiff filed this instant amended complaint pursuant to the ADEA, claiming that he was the target of unlawful retaliation for having filed a charge of age discrimination and for his having filed the original lawsuit. (Amended Complaint ¶ 13.)[3]

---

[2]Judge Conner previously held that this case did not include a constructive discharge claim after plaintiff's counsel stated at a pretrial conference that plaintiff was not asserting such a claim. (See Def. Mem. at 51-52). Although plaintiff's amended complaint alleges that the acts of defendants left him with no alternative but to retire earlier than he planned, plaintiff fails to include any argument in support of a constructive discharge claim. (Amended Complaint ¶ 25) As such, this court will not review the complaint as alleging a constructive discharge claim.

[3]Judge Connor permitted Plaintiff to supplement his complaint based on retaliation because he alleged that his superiors at the USMS were aware of his protected EEO activity and that they retaliated against him in response by, among other things: transferring him to a less prestigious and desirable division just three months after he filed an EEO complaint; changing his hours; failing to notify him of new promotional opportunities; and failing to promote him. Witkowich v. Gonzales, 541 F.Supp.2d 572, 591 (S.D.N.Y. 2008).

## Standard of Review

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Vacold, L.L.C. v. Cerami, 545 F.3d 114, 121 (2d Cir. 2008). The burden rests upon the moving party to show that there is no genuine issue of material fact. Mormol v. Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004). A fact is "material" only where it will affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242. 248 (1986). For there to be a "genuine" issue about a material fact, the evidence must be such "that a reasonable jury could return verdict for the nonmoving party." Id. When a properly supported motion for summary judgment is made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). In determining whether there is a genuine issue of material fact, the Court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). Where there is no evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is proper. Catlin v. Sobol, 93 F.3d 1112, 1116 (2d Cir. 1996).

## Retaliation Standard

In order to establish a *prima facie* case of retaliation under the ADEA, a plaintiff is required to show by a preponderance of the evidence that: (1) he participated in a protected activity, (2) defendant knew of the protected activity; (3) he experienced an adverse employment

3

action; and (4) a causal connection exists between the protected activity and the adverse employment action." Nieves v. Angelo, Gordon & Co, 341 Fed.Appx. 676, 679 (2d Cir. 2009). "A plaintiff's burden at the *prima facie* stage of a retaliation claim is *minimis*." Curran v. All Waste Systems, Inc., 213 F.3d 625 (2d. Cir. 2000).

If a plaintiff states a *prima facie* case of retaliation, it is subject to the McDonnell Douglas burden-shifting framework. Jetter v. Knothe Corp., 324 F.3d 73, 75 (2d Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under the McDonnell Douglas burden-shifting framework, once a plaintiff makes out a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. Id. Once a defendant has proffered a legitimate reason for its action, the plaintiff then bears the burden of showing the defendant's explanations are not the true reason, but instead are merely a pretext for a retaliatory motive. Id. at 75–76.

### Prima Facie Case of Retaliation

Section 633a of the ADEA applies to federal employees, and provides, in relevant part: "All personnel actions affecting employees or applicants for employment who are at least forty years of age . . . shall be free from any discrimination based on age." 29 U.S.C. § 633a(a). The Supreme Court had held that a federal employee, who is a victim of retaliation due to the filing of a complaint of age discrimination, may assert a claim under this section of the ADEA. Gomez-Perez v. Potter, 128 S.Ct. 1931, 1937 (2008); Triola v. Snow, 289 Fed.Appx. 414, 416 (2d Cir. 2008). Title VII and the ADEA contain nearly identical provisions prohibiting retaliation against employees who complain of employment discrimination, and the same standards and burdens apply to claims under both statutes. Kessler v. Westchester County Dept.

of Social Services, 461 F.3d 199, 205 (2d Cir. 2006) ; see Potter, 128 S.Ct at 1940–41; see 29 U.S.C. § 633a(a); see  42 U.S.C. § 2000e-16(a).

Plaintiff was engaged in a protected activity and the defendants were aware of such activity.[4] However, at issue is whether what plaintiff complains of satisfies the adverse employment action prong of a retaliation cause of action. To satisfy this element a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this case "means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Kessler 461 F.3d 199, 209 (2d Cir. 2006) (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). To be sure, reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. Id. at 71.

### Adverse Employment Action

Plaintiff cannot establish a *prima facie* case of retaliation as to his claims, because the incidents he complains of do not constitute adverse actions that would dissuade a reasonable person in plaintiff's position from filing a charge of discrimination. The applicable standard is

---

[4]Defendants concede that Plaintiff can establish the first two elements of his *prima facie* case. (Defendants' Memo of Law at p. 11, footnote 2). Defendants concede, "[o]n May 31, 2005, plaintiff contacted an EEOC counselor at the USMS concerning alleged age discrimination against plaintiff, and the EEO office allegedly notified plaintiff's supervisors of his claim."

set forth in White, 548 U.S. at 67-68. Title VII's anti-retaliation provision applies broadly to "employer actions that would have been materially adverse to a reasonable employee or job applicant." 548 U.S. at 57. Actions are considered "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. Most of the facts relied upon in support of the amended complaint involve actions plaintiff contends were taken by his employer that purportedly upset him or caused him embarrassment. Those actions are not sufficient to meet the adverse employment action prong of a retaliation cause of action.

None of the employment actions plaintiff mentions as a basis for his retaliation claim, involved a loss of money, or job responsibility, or were significant disciplinary actions, or otherwise sufficient to constitute a materially adverse employment action.[5] For example, plaintiff argues that the temporary transfers he was given were not typically given to someone with his years of service. Some of his other complaints were that he received a "letter of instruction" when he refused to answer a direct question by his superior, and received other reprimands and criticisms by his supervisors.

By requiring a showing of material adversity, White preserves the principle that Title VII "does not set forth 'a general civility code for the American workplace.'" White, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80,(1998)). "[P]etty slights or minor annoyances that often take place at work and that all employees experience" do not

---

[5]Plaintiff also describes various minor incidents that he claims were made in retaliation for his filing of age discrimination suit, such as an alleged delay in renewing his Top Secret clearance, allegedly being awarded a time-off award when he was already awarded the maximum for that year, not receiving awards and commendations, and being asked to resubmit paperwork relating to a knee injury.

6

constitute actionable retaliation. Id. Thus, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67.

Plaintiff also contends that in July 2005 his official hours were changed by one half-hour, from 8:00 a.m. to 4:30 p.m., to 8:30 a.m. to 5:00 p.m. There is nothing in the record indicating that this had a detrimental effect on Plaintiff's terms of employment, career, or personal life. Such incidents must be evaluated on a case-by-case basis because "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006).

Plaintiff has not proffered any evidence to show that this change in his official hours adversely affected him. In fact, plaintiff testified at his deposition that this change to his official duty hours "really didn't matter to me," and that it did not affect the time he was actually in the office. (Morrison Dec., Exh B part 2, ¶¶ 239, 359–360). Since the schedule change did not affect plaintiff at all, it is a reasonable conclusion that this was not an act that would not dissuade a reasonable worker from making or supporting a charge of discrimination.

Plaintiff further claims that "within one day of filing the . . . [age discrimination] lawsuit and on September 6, 2005, he was subject to a punitive job transfer to a significantly less desirable post geographically further away from his residence under circumstances where he was stripped of his supervisory duties and required to perform predominantly clerical, non-investigative duties." (Amended Complaint ¶ 14). This temporary transfer was to last four to six weeks. (Guccione Decl. ¶ 1). However, Plaintiff was only at the new location for three days before he went out on a four-month sick leave of absence on September 9, 2005. Id. ¶ 15.

Plaintiff relies heavily on the Second Circuit's opinion in <u>Kessler v. Westchester County Dept. of Social Services</u>, 461 F.3d 199 (2d Cir. 2006). In <u>Kessler</u>, the court held that a jury could find that a reasonable employee would be dissuaded from making or maintaining a charge of discrimination if it would result in the plaintiff being transferred to an office where he would not be allowed to perform the broad discretionary and managerial functions of his position, no one would report to him, and he would be forced to do work normally performed by clerical and lower-level personnel. The present case is also distinguishable from <u>Kessler</u> in that plaintiff's transfer was for a temporary period of four to six weeks, not for a year or more as it was in <u>Kessler</u>. See <u>id.</u> 203. The plaintiff in <u>Kessler</u> overcame the defendant's legitimate nonretaliatory reason for the adverse action by adducing evidence that the reasons given by the defendant were pretextual – his skills were not utilized in the new location and he was told that he was not needed at the new location and that he was sent there to remove him from his previous office. <u>Id.</u> at 211.

Here, Plaintiff was transferred from being a Supervisory Deputy United States Marshal in the Southern District of New York in the White Plains sub-office to the Supervisory Deputy assigned to Enforcement Operations located at the New York/New Jersey Regional Fugitive Task Force, in Manhattan. (Plaintiff's Rule 56.1 Counterstatement ¶ 9, 11). Plaintiff argues that the transfer was "punitive," that it was "to a significantly less desirable post geographically further away from his residence," and that "he was stripped of the bulk of his supervisory duties and required to perform predominantly clerical, non-investigative duties." Amended Complaint ¶ 14. This incident fails to rise to the level of an adverse employment action to establish a *prima facie* case. Plaintiff also claims that in October 2006 "he was punitively reassigned to the New York/New Jersey Regional Fugitive Task Force," causing "his commuting time [to] more than

8

double[] and his hours of work were altered causing plaintiff hardship." (Morrison Decl., Exh. A at ¶21). In this circumstance, plaintiff cannot prove that he suffered, nor did he establish that the district-wide rotation system that was applied to each of the eleven Supervisory Deputies was a pretext for retaliation against him. The evidence indicates that there was a District-wide rotation of Supervisory Deputies, done at the request of a majority of those supervisors, and during which plaintiff received his first and second choices of rotations. Thus, this incident is not an adverse employment action sufficient to maintain a retaliation claim.

Even if these transfers were sufficient for Plaintiff to make out a *prima facie* case of retaliation, Defendant has proffered a legitimate reason for its action. Plaintiff argues that the transfer was made in retaliation for his filing of this action. The initial complaint in this lawsuit for age discrimination was filed September 2, 2005 and plaintiff was transferred on September 6, 2005. Plaintiff stated in his deposition that he did not tell any of his supervisors that he filed a complaint and that he did not know when they were served with the complaint (Morrison Dec., Exh B part 4, ¶¶ 402–03).

Only "general corporate knowledge that the plaintiff has engaged in a protected activity" is needed to satisfy the knowledge requirement. Kessler at 210. Plaintiff tries to satisfy this by stating that "[t]he complaint was filed in the same courthouse where Defendants work and their agents work." (Plaintiffs Rule 56.1 Statement ¶ 45). The United States Federal District Court for the Southern District of New York was not the employer of plaintiff, nor was this complaint brought against this Court. Plaintiff worked for and filed his complaint against the United States Marshals Service in the Southern District of New York. These two entities are not the same, and any complaints filed in this Court did not automatically notify defendants of any actions brought. The only evidence in the record indicating when Defendant had notice of the complaint is the

9

Affidavit of Service, which states that the United States Marshals Service was served on September 9, 2005 at 11:50 a.m., three days after plaintiff's transfer. While defendant did have notice of plaintiff's May, 2005 EEOC complaint, there is not a sufficient causal connection between the filing of the EEOC complaint and the transfer to infer a retaliatory motive.[6]

Plaintiff claims that while he was out on his sick leave in late 2005, he was not notified of a job opening for Assistant Chief. Even if this could constitute an adverse employment action, Defendant has proffered a llegitimate reason for its action. Defendant has adduced evidence showing that USMS policy requires "[e]mployees who wish to be considered for non-bargaining unit vacancies that occur while they are temporarily absent for leave . . . are . . . responsible for providing notification of : (1) The types of vacancies for which they would like to be considered during their absence; (2) The dates of their absence; (3) All required applications and submissions." (Declaration for Sandra M. Lyles, dates April 6, 2009) ("Lyles Decl."), ¶ 6; Morrison Decl., Exh. Z). The policy further provides that such information should be forwarded to the USMS Human Resources Division. Id. Plaintiff now bears the burden of showing the defendant's explanations are not the true reason, but instead are merely a pretext for a retaliatory motive.

Plaintiff admits that he did not provide written notice to the USMS Human Resources Division to inform them that he wished to be notified of merit promotion announcements during his four-month sick leave. Since plaintiff did not comply with USMS policy and has not offered

---

[6]Defendant has submitted evidence that the decision to temporarily transfer Plaintiff was made in late August 2005. Guccione Declaration ¶ 13. Moreover, Defendant has submitted evidence that it replaced Plaintiff at the transfer location with another "Supervisory Deputy in the Southern District, to serve as the Supervisory Deputy in the criminal section after Plaintiff went out on a sick leave of absence." Guccione Declaration ¶¶ 14-15. Plaintiff has submitted no evidence, other than his own conclusory allegation, that this job transfer was made in retaliation for his filing of his complaint.

10

any evidence indicating that his not being notified was merely a pretext for retaliatory motive, he has not overcome his burden. Therefore, his not being advised of a promotional opportunity while he was out on sick leave is not an adverse employment action.

Plaintiff additionally alleges that he was deprived of another career advancement opportunity when he was not notified of the opportunity to volunteer for a post at USMS Headquarters in or about July 2006. He alleges that the post was assigned by Marshal Guccione to another less experienced and younger person. Defendant has maintained that Marshal Guccione contacted only one Supervisory Deputy concerning the temporary detail because Guccione considered the particular employee to be well-qualified for the position.

Plaintiff has proffered no evidence to indicate that the nomination of the younger person was a pretext for unlawful retaliation. The nomination by Marshal Guccione occurred well over a year after plaintiff's May 2005 contact with the EEO counselor. Plaintiff has not rebutted the legitimate reasons why Marshal Guccione nominated the other person for the position. Plaintiff was not treated any differently than any of the other nine Supervisory Deputies who were also not nominated for the position. Plaintiff cannot establish any inference of retaliation sufficient to support the notion that this was an adverse employment action. See Avillan v. Potter, 2006 WL 3103309 at *12 (S.D.N.Y, Nov. 1, 2006) (conclusory assertions fail to furnish any objective basis for comparing the treatment received by the plaintiff and his coworkers). Moreover, plaintiff's claims must be dismissed if he fails to demonstrate that he ever "applied for a specific position." See Gupta v. New York City School Const. Auth., No. 07 civ 2991, 2008 WL 5273120, at * 2 (2d Cir. Dec.19, 2008) (citing Brown, 163 F.3d at 710). The complaint does not allege that plaintiff ever applied for a promotion. Thus, plaintiff's allegations fail to state a claim for retaliation based on defendants' failure to promote him.

11

Plaintiff claims that after a four-month sick leave of absence from September 2005 to December 2005, he "was unreasonably caused to utilize an additional week of sick leave . . . after he was medically cleared . . [to return to work]." (Plaintiff's Rule 56.1 Counterstatement ¶ 191). In response, defendant points out that the USMS Office of Employee Health Programs medically cleared plaintiff to return to duty, and sent an email to both plaintiff and his supervisor on December 30, 2005. Plaintiff's supervisor was on annual leave that week and did not receive the message until January 3, 2006. The USMS Office of Health Programs then sent an email dated Friday, January 6, 2006, to plaintiff's supervisor, confirming that plaintiff had been cleared to return to full duty status. Following his receipt of that email, on January 6, 2006, plaintiff's supervisor called plaintiff, who returned to work the next business day.

Plaintiff does not argue the fact that he was paid for the additional week he was out on sick leave. (Morrison Decl., Exh. B at 427–28). It is difficult to perceive this as an adverse employment action. Plaintiff's terms of employment, career, and/or personal life were not affected. This is not the kind of employment action that would dissuade a reasonable worker from making or supporting a charge of discriminationn since it did not affect plaintiff in any material way. Thus, it is not a material adverse employment action.[7]

Plaintiff alleges that the renewal of his top secret clearance was "unjustly delayed for over eight months . . . [and] clearance was required for positions that may have become available for plaintiff to apply for promotion." (Morrison Decl, Exh. A at ¶ 19(d)) However, the renewal of his top secret clearance had no affect on his ability to apply for and receive any available

---

[7]Moreover, plaintiff has not offered any evidence whatsoever to show that defendant's explanation, Def. Mem of Law fn. 10, are merely a pretext for a retaliatory motive. Plaintiff's Mem of Law in Opposition pg 4. Minor administrative delays do not constitute adverse actions. See Warren v. North Shore Univ. Hosp. at Forest Hills, 268 Fed. Appx. 95, 98 (2d Cir. 2008).

12

promotions and did not cause him harm in any manner. Plaintiff continued to maintain his top secret clearance at all times after he first received clearance in July 2001, including at all times during the reinvestigation process which commenced on January 25, 2007. Id. ¶ 13; see also Morrison Decl, Exh. B at 485 (plaintiff's deposition testimony that his top-secret clearance was never suspended or revoked)). Because plaintiff maintained his top secret clearance at all times, the pendency of his fifth-year reinvestigation did not prevent him from applying for a promotion at any time.

Plaintiff alleges that in 2006, he was denied a time-off award for passing the mandatory FIT training. Plaintiffs allegations are meritless in that they do not constitute an adverse employment action. USMS records indicate, and plaintiff does not deny, that he received the maximum number of time-off awards he was eligible to receive in 2006. (Morrison Decl, Exh. B at 487-93). Therefore, his claim of denial of the time-off award is without merit and does not constitute an adverse employment action.

Plaintiff's allegations that the was denied the ability to convert four weeks of annual leave to sick leave from December 2006, until January 2007, thereby suffering a significant financial loss are insufficient to support a claim of retaliation. Amended Complaint ¶ 23; Morrison Decl., Ex. B pgs 531–33. Defendant submitted evidence that Plaintiff had not submitted adequate medical documentation to support his request, and that he was informed that additional medical documentation was needed indicating why a particular medical condition would prevent him from performing his assigned duties. Defendant's Memo of Law pg 42. This type of request is expressly stated on line 7 of the form that Plaintiff had to fill out in order to convert his annual leave to sick leave, which is titled "Request for Leave or Approved

13

Absence."[8] Plaintiff was asked to provide additional medical documentation because what he had submitted was deemed inadequate. The medical notes submitted by Plaintiff were too vague and not sufficiently specific. He declined to submit further documentation. Morrison Decl., Ex. B pgs 554–57; Def. Memo pg 42.

Defendant's request was clearly within USMS policy regarding the taking of sick leave. In his reply brief, Plaintiff merely reiterates what was in his amended complaint. He has not adduced any more evidence to support his claim, and has, therefore, failed to satisfy the McDonnell Douglas burden-shifting framework by showing that Defendant's reason for not allowing Plaintiff to convert four weeks of annual leave to sick leave is merely a pretext for a retaliatory motive.

Plaintiff adds an accumulation of further claims of retaliation: (1) he was denied a number of accolades and awards (Pl. 56.1 Stmt., ¶¶ 118-21); (2) he was assigned to perform subordinate tasks (Id. Exh. B at 511-13);[9] (3) his desk was broken into; (4) he was denied the ability altogether and or substantially delayed in having necessary mechanical repairs and maintenance performed on his work issued vehicle (id., ¶¶ 132-43); (5) there were alleged delays in the processing of his timesheets (id., ¶¶ 144-45); (6) he was required to retract a policy the

---

[8]It reads:
  7. **Certification**: I certify that the leave/absence requested is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal." Morrison Decl. Exh. O.

[9]Although the Second Circuit has found that the transfer from an "elite" unit to a "less prestigious" unit could constitute adverse employment action, De la Cruz v. N.Y. City Human Res. Admin. Dep't of Social Servs., 82 F.3d 16, 21 (2d Cir. 1996) plaintiff has presented no evidence aside from his own personal opinion that the tasks he was assigned to were those previously assigned to only subordinate employees.

14

plaintiff had distributed, with defendant's consent, regarding travel procedures employees were to follow; (7) he submitted a claim for worker's compensation benefits which defendant did not sign off on for three months (id., ¶¶ 151-54); (8) he was not provided with his annual performance review in a timely fashion (id., ¶¶ 155-59); (9) he received unjustified and critical emails falsely alleging that he failed to notify his superior about allegations of misconduct by a fellow Supervisory Deputy United States Marshal; (10) he received a "written 'Letter of Instruction;' and (11) he received workplace criticisms. None of the acts submitted by plaintiff can be considered materially adverse, either individually or in combination. They are not harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination. Further, plaintiff does not provide evidence sufficient to support that he was harmed by these actions. The evidence does not support a claim of retaliatory adverse actions taken against plaintiff in response to his filing a claim of age discrimination.

## Conclusion

Defendants' motion for summary judgment is granted.

Dated: March 31, 2010
New York, New York

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

15